And the next case is In the Matter of Bobby F. And you're ready to proceed, okay? Okay, thank you, Your Honors. May it please the Court, Counsel. My name is Barbara Dobin, and I'm representing Bobby F. With regard to this appeal of the involuntary medication order from Randolph County. For the review, Your Honors, today, we present two main issues. Whether the state failed to prove, through clear and convincing evidence, two of the required elements prior to obtaining the involuntary medication order. And second, whether they complied with the mental health code in the final order. The first issue is whether the state failed to present clear and convincing evidence of all the elements. And as it's well known, involuntary medication is a protected due process liberty interest. And because one of the elements of the due process is that the state has to present clear and convincing evidence. And two of the elements under the mental health code that they have to present is, one, that the benefits outweigh the harm of the administered medication. And second, whether he had the capacity to reject or make a reasoned decision based on the information he received. So the first issue I would like to talk about is the issue of capacity, and that's A-5-4-E. And this is a key element, because as you well know, even a person can refuse medical treatment, even if it can result in death. So there's a long line of precedent that capacity is proven once they receive written information, based on the decision on the written information they receive. And the written information, based on 5-2-1-0-2 and precedent, is that it cannot only be just the side effects of the medication. But it's the side effects, benefits, and information about alternative forms of treatment. And as I stated to your honors before, it's key to not just give information about the side effects, but the benefits of the treatment. Because then the person may be more likely to take the treatment if they see what the benefits are. And also, we're not arguing all the alternative forms of the medication, but alternative forms of treatment, which is counseling, therapy, which is defined under 5-1-1-28 of the Mental Health Code. As this court has stated, verbal information is not sufficient to prove this category. And also, this error is not subject to harmless error. And I think if you think of the policy, the patient needs to be fully informed of what medication he's going to be in voluntary treatment, why the other forms of treatment won't work in his case. And I think that's one of the policy considerations behind this. Here, Dr. Casey just confirmed that he discussed the information and gave written information about the side effects. The state completely ignored the other two elements, benefits of the treatment or written information about the alternative forms of treatment. The state in its response argued, well, the petition contained information about the benefits of the treatment, but it's well settled that the petition is not evidence. And so basically, that's the issue with regards to the capacity. With regards to the issue of whether the state proved that the benefits outweighed the harm of the medication, that's Section A5-4D. And if you look at the policy behind this, it's almost like the parentis-parenti, I probably mispronounced that, role of the trial court to make sure that the medication is in the right amounts, what are the benefits, what are the side effects of the involuntary medication to be administered. And this element must be proven. And to prove this, you have to give information about the dosage, symptoms, and benefits and side effects of all the medication to be prescribed. Here, the information about the dosage was so bad that the defense counsel, who actually at this time took an active role, so we're making progress in Randolph County, and the trial court had to ask for clarification of what the medication is. And then, Dr. Casey, I still try to review this one paragraph. It's in the record 35-36. And the dosage is so, it doesn't correspond with what the petition says and what the order entered. You know, he, mainly the state asked, are you asking for the dosage, what is required in the petition? He said yes. And then he says, what dosage are you administering? And he gives such an unclear answer. I've reviewed it two or three times. I don't know what milligrams are ordered, what pills are ordered, for which medication. Furthermore, Dr. Casey simply affirmed that the benefits outweigh the side effects, but did not state clearly the benefits of all the medication, only Zyprexa and not the other medication. With regard to the side effects, he didn't detail what the side effects were to the judge. So I don't know how the judge could enter in its rule of parenthesis, parenthesis, you know, that the benefits outweigh the side effects if it wasn't given this evidence. So, and basically, the only testimony offered by the state was that Chester would monitor the blood work of the respondent because lipid panel and sugar are one of the side effects increase of this. So that's the information that was presented to the court about the side effects. But we didn't know which one would cause that. It was just a general information about the testing, why testing was needed. Basically, I'm arguing that really this shouldn't be affirmed because really the information about the risk and benefits, as I said, helps with the parenthesis-parentheti role as in RA-CE, the Supreme Court stated. Also, I think it prevents drug mismanagement on this, whether how many medications are given to this gentleman. And also, this court has expressed a concern about the pro-form nature of these cases. I think just saying the benefits outweigh the risks without informing or without explaining the side effects of these medications is toward the cookie-cutter nature of this case. And also, in this case, it's a little bit different. He wanted to take one drug, Abilify, and the physician wanted Zyprexa. So there was almost like a balance of which drug would be better for him. But there was no evidence of benefits or side effects of both the drugs, just benefits of the Zyprexa. The third issue we would like to bring up is that the order entered failed to specify the range of dosage of all the medication order. This is required under 107.1856. And the use of mental health code says shall specify the range of dosage for all the medication order. And this is important because it notifies the recipient how much medication. It ensures proper administration of the drugs. It's also a check on not to use the medication as a way to control the patient. And it's in line with the trial court's role of safeguarding the health of the recipient and to ensure, and one of the mental health code's goals is humane and adequate treatment. And to ensure proper dosage is adequate treatment. Here, the order says administer VDA, which is actually, it doesn't say in the order. VDA is Valproic acid, which is Depakote. And the dosage is up to a therapeutic dosage. So that's not really a range of dosage. Hopefully they're not administering a non-therapeutic dosage, but there's no numeric dosage. And allowing the term therapeutic to satisfy this provision of the code would really more the plain and ordinary language of the code say requiring the order to specify the dosage limits. And would place really no dosage limits on the physician because you could always say the dosage was therapeutic. They're not going to admit the dosage wasn't therapeutic. And also it really doesn't inform, say therapeutic dosage doesn't inform the defense attorney or court whether this is within acceptable levels of administration of the medication. The state will probably argue, and they've argued in their response, that the respondent waived this issue by not raising it at trial. But this court in Williams said with regard to orders for involuntary medication, there needs to be strict compliance with the components of the code because there is a liberty interest involved. Waiver, of course, is a limitation on the parties and not the courts. And this is a plain error thing. It's obvious on the four corners of the document. And also, letter P, another district rejected these waiver arguments with regards to the order. It may seem simplistic. Why not just allow therapeutic? But the code specifies that it should be a range of dosage. And therapeutic is not a range of dosage. And for these policy reasons, perhaps this court should, we would argue this court should issue an order reversing the trial court's order and directing that therapeutic is not a satisfactory compliance with the mental health code. And there's this, the issue, of course, whether, well both parties agree that this issue is moot. But we would argue that this appeal satisfies both the public interest and capable repetition exceptions to mootness doctrine. Briefly, the public interest exception is if there's a, first of all, it's a matter of public concern because there's a liberty of interest involved. There's a need for authoritative decisions, especially on the issue of the order, because actually there's no case law whether therapeutic dosage is allowed under the code. Manhoff County always comes up with surprising things, and this is the new one that they came up with. They're getting better, though. Yeah, they are getting better. And actually, I mean, just off track on cases, they are having hearings now for the most part. I haven't seen a waiver of a hearing. They are getting better. So they are actually taking your decisions to heart. And basically this is not a case where was this person ill enough to administer the medication. It's a case where the state, whether this is the state, complied with the code in presenting its evidence. So it can be, it's really capable of future reoccurrence because in every involuntary medication case, they have to present evidence whether the person received information about the risks, benefits, and alternative forms of treatment, and they also have to make sure the order conforms with the plain language of the code. And for these reasons, because it's issue will present itself in the future, it's capable of repetition. This is not really like a new case like Alfred H.H., which is the Illinois Supreme Court case on this issue. That was a case where there was, whether there was sufficient evidence to commit someone. This is not based on whether there's sufficient evidence to administer the medication. But, I mean, but it's whether the state complied with the code in presenting the basic elements required. Talking about this written information, you claim that the state failed to show that he was informed in writing. The state says he was given written information. Your reply says he wasn't, again, on the side effects and the risks and benefits as well as alternatives. I mean, you say he wasn't. They say he was. It's pretty clear it's going to be record intensive, and it's either in there or it isn't. You're guaranteeing us that it's not in there, that he was given written information. All it says is that he was given written, in the testimony, written information about the side effects. Not the risks and benefits. Not the risks, well, not the benefits and alternative forms of treatment. So the side effects, the doctor testified, he explained it to him and gave it to him in writing. The testimony at the hearing was, there was no written, nothing was mentioned about the benefits and alternative forms of treatment. Now the state, from my recollection, their response is they stated that the petition lists the benefits and side effects of the medication. But that wasn't entered into evidence. And furthermore, so there's case law where petition is not the evidence. And second of all, there was no information about the alternative forms of treatment. The petition only says that alternative forms of treatment will not work. But not any, just, not any detailed information about it. Any further questions? Not at this time. Okay, thank you. Thank you. And Ms. McCormick? Yes, Rebecca McCormick, I'm arguing in place of Neha Sharma who briefed the case. This is hardly a cookie cutter mental health case. This particular respondent, there's more information about alternatives that were tried than in usual cases in my experience. The respondent claims that the state failed to prove that he lacked the capacity to make a reasoned decision about his treatment. And that they failed to prove that the benefits of the treatment outweighed the harm. There are many factors that the court can consider in making this decision. And they are, not a single one of them is dispositive. The first is whether the person has a knowledge that he has a choice to make. And that goes, of course, to whether he was informed about the risks and benefits and alternative treatments. The record shows, and Dr. Casey testified, that he was given a written description of the risks and benefits. As to alternatives, Dr. Casey testified that the respondent wanted to try Abilify instead of Zyprexa. And he had a problem with taking Zyprexa for reasons that I'll get into in a moment. So they agreed and treated him with Abilify and titrated him up to the maximum dose instead of Zyprexa. And instead it didn't help him at all and he decompensated and deteriorated and got worse. So they tried alternative treatments. The respondent was unable to appreciate that Abilify was not going to work for him because of his problems. Another thing that a court can consider is if a person has received the type of medication or the treatment issued previously. Or if the person has received a similar treatment in the past. And whether he can describe what happened as a result and how the effects were beneficial or harmful. Or the court can also consider the absence of any interfering pathologic perceptions or beliefs. Or interfering emotional states that might prevent an understanding. And those things are present in this case because the respondent was 31 at the time. He had been admitted involuntarily 11 times since the age of 19. He denied that he was bipolar. He had no insight into his mental health problems. He was unable to recognize that Abilify isn't helping him. Instead, the respondent insists that he's diabetic. Dr. Casey says that he has no knowledge that he's diabetic. He insists that Zyprexa lowers his blood sugar. Dr. Casey testified, no, it doesn't do that. It does not have that side effect. So he has this persistent belief that he has diabetes and that Zyprexa lowers his blood sugar. The respondent also claims to have two rather severe side effects that can occur with Zyprexa. One, photophobia. And two, oculoduric crisis. Dr. Casey said he has neither of those. But the respondent insists that he does. So he has a problem understanding how Zyprexa helps him. He persists in the belief that he has these side effects when he doesn't. He persists in the belief that he has diabetes and that it's lowering his blood sugar. So he clearly can't understand how it is that Zyprexa is helping him. Let me interrupt you. I'm more interested in not what he understands, but what the doctor told the court and the court understood. So Ms. Globin claims that with regards to the proposed treatment benefits and side effects, Dr. Casey simply affirmed the state's question and there was no further inquiry about that. How do you respond to that? Nobody asked the doctor about what the medication's side effects would be and the benefits to this person. Did he just say the benefits outweigh the risks? He might have answered that question, but he expanded in other portions of his testimony, explaining that for this particular respondent, Zyprexa worked and it was highly effective and he did not suffer the side effects, very few side effects to Zyprexa. That's what he told the court. Let me ask you this. Does the dosage differ from what was given? Does the dosage the doctor talked about differ from actually what was given and what he was told, the dosage? I don't recall him discussing the dosage, except that the order itself that the court gave gives specific dosage for the Olanzapine, which is Zyprexa, of up to 30 milligrams a day. So it's going to vary. Yes, it's going to vary up to 30 milligrams a day and if he at certain times got more or less, that's very possible. I thought Ms. Gobin claimed that there was no range of dosage in the order. Oh, yes, there is. It's in the record at RC15. Olanzapine, up to 30 milligrams a day, that's Zyprexa. Clonazepam, sorry, I stumble over these, up to 10 milligrams a day. Haldol, up to 100 milligrams a day. Ativan, up to 10 milligrams a day. And then Depakote, which is the valproic acid that gets listed in the order as BPA. That's the only one where it says it doesn't have a particular milligram. It says up to a therapeutic dose. What page was that on again? That's RC15. It's attached to the judge's order. These are the specific dosages. Now, you know, as far as all of these medications, the respondent was agreeable to take all of them except the Zyprexa. So if you look at the BPA. Of course, if you're incapacitated, the fact that you agree to something isn't really much help, is it? I'm sorry. If you're incapacitated, your agreement to take something isn't much help, is it? Well. You can agree to fly to the moon, too. That's true. That's true. But the involuntary part of it, you know, he is agreeing that he'll take all these other medications. He doesn't have a problem. The only medication that's being involuntarily administered is the Zyprexa. So in a sense, you know, the argument over whether there's not a specific dose for the Depakote is really not an issue because he doesn't have to. On the record, he testifies he doesn't mind taking Depakote. He has no objection to taking it. As long as he agrees with you, he has sufficient understanding. But when he doesn't, then he's... But do you think, and maybe it's not an issue, but do you have any concern about using just therapeutic dosage? But that's adequate. It may not be an issue in this case, but it does seem like that's not a good idea. Your Honor, I think that perhaps within the medical field, up to therapeutic dose has a meaning that is specific enough to make this tolerable. Personally, as an attorney, I would like to see the milligrams. But personally, I don't have enough knowledge to tell you whether that has a specific meaning. I'm assuming that it does. And the other problem with that is that the respondent made no objection to this order when he could have. And so it is weighed. And so, you know, there are two problems with the Depakote. But the problem is that the respondent doesn't have... The people showed that he didn't have... Let the capacity to make a reasonable decision about the Zyprexa because of the testimony of Dr. Casey and because of the fact that he insists that he has these conditions and side effects as a result of Zyprexa, which he does not have. And he's unable to recognize the fact that, you know, given the experiment to see if Abilify would work, he was unable to understand that Abilify was not working. He deteriorated rapidly even at the maximum dosage of Abilify. So he simply... The people showed that he really does not have the capacity to make a reasonable decision about the administration of Zyprexa. And the people also showed that the benefits outweigh the harm in that they can compare it. The people were able to compare it, his deterioration under alternate forms of medication. And Dr. Casey also testified that redirection of his, when he became angry and manic and out of control, that redirection was not working and Abilify was not working, that the only effective treatment was the Zyprexa and it controls him quite well and he does better underneath it. So, you know, he hasn't actually attacked anyone yet at this particular facility, but he's threatened to kill them and threatened to physically harm them. So the benefits and the risks, especially since this respondent isn't suffering the kinds of side effects that he says he has and Dr. Casey said that he has very few side effects and that they are monitoring him, it appears that the court is correct in saying that the benefits outweigh the risks. And for all these reasons, unless the court has other questions, we ask the court to approve the court's ruling. Thank you. Ms. Goldman, any rebuttal? Just to clarify what occurred at the hearing on page C32 of the record. What was that, please? Say what again? C32 of the record. The state asks Dr. Casey, have you discussed with him the need to take the medication? Dr. Casey answers yes. And then the question is, at the present time, do you feel he has the mental capacity to understand the need for the medication? No. And then the next question is, have you given him a written list of any side effects that may happen? Yes. And then they ask about the side effects. Have you seen any side effects? Not what are the side effects. Have you seen any side effects? And he says no. So just to clarify that point on it. And with regard to the issue of the capacity, the state is correct on what I call the Israeli factors. There's about six or seven factors to determine whether someone has the capacity to make a reasoned decision. But before the court can go into all those factors, I would say it's like a gate opening. That the person needs to get this written information before they consider the other factors. So it's a key and essential element required not only by precedent but by the statute that he receive this written information. And with regard to the dosage, it was just the Valparaiso VPA that they said up to a therapeutic dosage. But then the doctor's own testimony on page C35 was that, and bear with me. He said, well, his current medications, he's on valproic acid, the Depakote. He gets 15 milligrams in the morning, I'm sorry, 2,000 in the morning and 15 milligrams at night. His blood level is therapeutic. And then he continues on. He's on Clozapam, 2 milligrams, TID three times a day. We have his PRN of Halodol and Ativan, five Halodol, two Ativan, and he's on Zyprexa. And that was the information given on the dosage, which I don't understand what the, five pills, two milligrams, on that part. But his testimony at the record on Depakote, I guess he clarified himself. But it was never entered in the order, said up to a therapeutic dose. Thank you for your patience for me reading through the record. That's okay. We appreciate your argument very much and each of your briefs and arguments. And we will take the matter under advisement, provide you with an order at the earliest possible time.